KEARNEY and another *v.* LEHIGH VAL. R. Co.[1]

*(Circuit Court, D. New Jersey.* June 3, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—PARTIES—PLEADING—ESTOPPEL

To support a plea in abatement for non-joinder of parties in a suit for infringement of a patent, defendant offered in evidence a written certificate given by plaintiffs to a third person, and reciting that such person had "one-third equal interest with ourselves in the said patent." Defendant urged that plaintiffs were estopped from showing by parol that the writing did not state the agreement and intention of the parties. *Held,* that this was not a case for the invocation of the doctrine of estoppel.

2. SAME—ASSIGNMENT—NOTICE.

The bill of complaint in this case was filed March 15, 1883, by plaintiffs, claiming to be the sole owners of the patent sued on and all rights under it. On May 10th following, defendant procured an assignment of the patent and a release of infringement claims from one who claimed an interest. *Held,* that defendant was a purchaser with notice, and was subject to all the equities that could be invoked against its assignor.

3. SAME—ASSIGNMENT.

A certificate given by patentees, which recited that the party to whom it was given had "one-third equal interest with ourselves in the said patent," *held* not an assignment of the patent, or any part thereof; the evidence showing that it was not intended by the parties giving it to operate as an assignment.

*Andrew McCallum,* for complainants.
*Elwood C. Harris,* for defendants.

NIXON, J. The bill of complaint was filed in this case by Francis Kearney and Mary F. Tronson, as executrix of Luke F. Tronson, deceased, against the defendant corporation, for an injunction, and for the recovery of profits and damages for the alleged infringement of reissued letters patent No. 5,184, for new and useful "improvements in spark arresters for locomotives." The defendant has put in a plea in abatement of the suit, for the non-joinder of parties, alleging that

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

at the time of the commencement of the action, and prior thereto, the complainants were not the sole and exclusive owners of said letters patent, and that one John H. Immer, of Newark, New Jersey, had an equal undivided one-third interest therein. In support of the plea the defendants offered in evidence the following written certificate, executed on the day of its date, duly received for record, July 2, 1873, and recorded in Liber V. 16, p. 289, of Transfers of Patents:

"*To whom it may concern:* This certifies that John H. Immer is fully authorized and empowered to make any contract with the Central Railroad of New Jersey, that may be binding on our part, for the sale of the patent-right on spark arrester, as secured to us by letters patent 113,528, dated April 11, 1871, and reissue 5,184, dated December 10, 1872, he having one-third equal interest with ourselves in the said patent.

[Signed]                                        "F. KEARNEY.
                                                "LUKE F. TRONSON.

"*Newark, April* 10, 1873."

The counsel for the defendant insists that the paper constitutes an equitable assignment of the one-third ownership in the reissue; that it is a writing free from all ambiguity; and that the complainants are estopped from showing by parol such was not the agreement and intention of the parties. But it does not seem to be a case for the invocation of the doctrine of estoppel. The facts are substantially as follows: Kearney and Tronson obtained the original letters patent on April 11, 1871, for a new improvement in spark-arresters; and, being desirous of bringing the invention into general use on the railroads of the United States, they entered into an agreement with one John H. Immer on April 5, 1872, in which they constituted him their sole agent to sell patent-rights for the period of one year, at the rate of $50 for the use of said improvement upon each engine to which it should be applied; and they further agreed that Immer should be authorized to retain 25 per cent. of all moneys received by him in said sales, for his full and complete compensation, and should pay to the patentees the remaining 75 per cent. During the continuance of this contract the parties came to the conclusion that the claims of the patent were not broad enough to fully cover the invention, and a surrender and reissue was deemed necessary. The patentees not having the means to pay the required fees, it was agreed that Immer should have his rate of compensation changed from 25 per cent. to $33\frac{1}{3}$ per cent. of the proceeds of the sales of patent-rights, on the condition that he should pay the costs of the reissue. The reissue was obtained on December 10, 1872, and he made the necessary payment of fees; but no change was formally introduced into the written agreement. It expired April 5, 1873. A few days afterwards Immer called upon Kearney with the above paper or certificate, stating that he wanted authority to settle the claim for infringement which they had against the New Jersey Central road, and that he had drawn the paper to show to the officers of the road that he was authorized to make the settlement, and at the same time to express the

new arrangement as to his compensation, which had been agreed to. With this explanation of its meaning, Kearney and Tronson signed the certificate, and there is no evidence that Immer ever gave any other construction to it, or made any claim to ownership in the patent, until after this suit was brought, unless the assignment of the one-third of said patent by Immer to one Annan on April 28, 1874, and the reassignment of the same by Annan to Immer on June 23, 1875, be construed to indicate such claim.

The bill of complaint in this cause was filed March 15, 1883, by Kearney and the executrix of Luke F. Tronson, claiming to be the sole and exclusive owners of the patent. It was after this date that any notice came to the defendant that Immer set up any claim to ownership in the patent. On May 10, 1883, he assigned to the defendant corporation all the right to the reissue, and added a special release and discharge for all claims for damages for any prior infringement. The defendant, therefore, was a purchaser with notice that complainants denied the claim of Immer to ownership in the letters patent, and it is subject to all the defenses that could be set up against Immer himself. The certificate was not an assignment of the patent, or the part thereof; and, judging from its form, it was not intended by the parties to be so regarded. Whether its use should be limited to the settlement of the claim against the New Jersey Railroad it is not necessary to determine, although that seems to be its fair import. It is clearly competent, however, for the complainants to set up the same defense against the claim of ownership by the defendant corporation as they could have set up against Immer; and the testimony satisfies me that, when the patentees signed the certificate, they understood the scope and meaning of the paper to be that Immer should be entitled to receive the one-third, instead of the one-fourth, as before, of the money realized on the sale of patent-rights.

This construction of the certificate does not invest Immer or his assignee with any title, legal or equitable, in the patent itself. It simply determines the rate of compensation to which he was entitled on sales of patent-rights. I am aware that the phraseology used is capable of different construction; but I regard any other construction as aiding Immer in his attempt, by deception, to get more than the patentees intended he should have.

There must be a decree in favor of the complainants, on the plea.